### CHICAGO PNEUMATIC TOOL CO. v. HUGHES TOOL CO.

No. 1623.

Circuit Court of Appeals, Tenth Circuit.

July 1, 1938.

Rehearing Denied Aug. 15, 1938.

William F. Hall, of Washington, D. C., and Earle W. Evans, of Wichita, Kan. (P. C. Simons, of Enid, Okl., on the brief), for appellant.

George I. Haight, of Chicago, Ill. (Jesse R. Stone, of Houston, Tex., and B. A. Ames, of Oklahoma City, Okl., on the brief) for appellee.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

BRATTON, Circuit Judge.

Hughes Tool Company instituted this action against Chicago Pneumatic Tool Company to restrain alleged infringement of letters patent Number 1,647,753, issued November 1, 1927, relating to conical cutters used in rotary drills in drilling wells for oil and gas. Floyd L. Scott and Louis H. Wellenseik were the inventors, and plaintiff acquired the patent from them by assignment. The trial court held claims 2, 3, 4, and 5 valid and infringed.

The mechanism long in use in rotary drilling is a bit head secured at the lower end of the drill stem. Mated conical cutters are pivotally mounted on the bit head in such manner that, as the drill stem and bit head are rotated about the vertical axis of the bit head by suitable driving mechanism positioned on the floor of the derrick, the cutters are revolved on their own axes by their traction on the surface of the bottom of the hole. The cutters or teeth on the cones prior to the advent of the patent were approximately pyramidal in shape. The patent is directed to the form of the cutters or teeth on the cones. The claims, in composite, disclose conical cutters with their apices adjacent the axes of rotation of the drill head, mounted on the bit head to contact the surface at the bottom of the hole with an approximately true rolling motion, having long, narrow, chisel-shaped, penetrating teeth, arranged in circumferential rows around the cone with their adjacent sides parallel, spaced apart to provide wide clearance, inclined toward the apex of the cone so as to extend downward when in contact with the surface at the bottom of the hole, and adapted to interfit. The asserted advantages are better traction thus assisting in the rotation of the cones about their own axes, and more effective engagement with the material being cut.

It is contended that there is lack of infringement for the reason that the patent is limited to a structure in which the teeth on one cone have an interfitting relation with those on the other, while in the accused assembly the cones are spaced apart in such manner that the teeth do not interfit. The claims do not provide that the teeth shall interfit. Claims 2 and 3 provide that they shall be adapted to interfit, and claims 3 and 4 are silent in respect of the matter. The specifications describe the invention with particular reference to the interfitting feature of an earlier patent issued to Scott, and the diagrammatical drawing discloses interfitting teeth. But it is not essential that all of the embodiments of a patent be described. It is enough if the invention be described together with that mode which is conceived to be the best for putting it into practical use; and where that has been done, the patent is not confined to the precise mode outlined. Tilghman v. Proctor, 102 U.S. 707, 26 L. Ed. 279; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122.

Neither is it necessary that every embodiment be illustrated by the drawings unless the form of the device is the principle of the invention. Where the particular form is not an embodiment of the principle of the asserted invention, the patent is not restricted to the exact form of construction shown in the diagrammatical drawing. And a device infringes if it embodies the essential principles taught by the patent, even though there is a departure from the drawings to the extent of simple changes which would be readily conceived and made by a mechanic in the course of constructing a device on the patent. Johns-Manville Corp. v. National Tank Seal Co., 10 Cir., 49 F.2d 142; Pangborn Corporation v. W. W. Sly Manufacturing Co., 4 Cir., 284 F. 217, certiorari denied 260 U.S. 749, 43 S. Ct. 249, 67 L.Ed. 495.

But in addition to the language contained in the claims and specifications, and the drawing, reliance is placed upon Hughes Tool Co. v. International Supply Co., 10 Cir., 47 F.2d 490, to sustain the contention that the patent is limited to a device having interfitting teeth. It was held in that case that patent Number 1,480,014 issued to Scott in 1924, was limited to a structure having interfitting teeth. That is the patent to which reference is made in the specifications in this patent. But there the principle of the invention was interfitting teeth. Here the principle of the invention is long, narrow,

chisel-shaped, penetrating teeth, arranged in circumferential rows around the cone, with their adjacent sides substantially parallel, spaced apart to provide wide clearance, and inclined toward the apex of the cone in such manner that they will extend downward when in contact with the surface at the bottom of the hole, and being adapted to interfit. There is a clear and distinct difference between the principle of the invention in the two patents, and for that reason the decision in the earlier case is neither decisive nor persuasive here.

In view of the language in claims 2 and 3, and the absence of any language in claims 4 and 5 touching the subject-matter, the drawings and specifications do not present warrant or occasion for limiting the patent to a structure having interfitting teeth.

Next, it is argued that one element in the combination covered by the patent is cutters having true rolling action, and that the accused assembly has no response to that element. True rolling action is effected with a properly mounted cone having a cutting periphery so formed that if extended it will terminate in the central axis of rotation of the bit head. It is essential to true rolling action that the cone be so shaped that the cutting edges of the teeth in each lengthwise row are in a straight line. A cutter with true rolling action has only downward pressure and crushing action, and when teeth are arranged otherwise there is slipping or scraping action as the cones are revolved by the drill and as they rotate on their own axes. The teeth in the accused assembly are in two zones. The cutting edges of those in the front zone are in a straight line and define a frustum of a cone the apex of which is in the central axis of the bit head, while the cutting edges of those in the rear zone define the frustum of a cone the apex of which is beyond such axis of the bit head. But the claims of the patent do not exact true rolling action of mathematical precision. Claims 2 and 5 disclose cutters mounted with their apices adjacent the axis of rotation of the drill; and claims 3 and 4 disclose cutters with their cutting areas converging toward the central axis of the drill, and mounted to contact with the bottom of the hole with approximately true rolling motion. Furthermore, Figure 1 of the drawings discloses cones the apices of which extend beyond the axis of the bit head. The ac-

cused device is not one of true rolling action. There is slight slipping or scraping action in its use. But it is approximately true rolling motion. The apices of the cones are reasonably adjacent the central axis of rotation of the bit head. The departure from the disclosure of the patent is merely colorable. An insubstantial departure from a patent without change in principle does not avoid infringement. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir., 54 F.2d 896.

The third question is whether the teeth on the accused device are so shaped and formed that they come within the claims. The patent calls for long, narrow, chisel-shaped, penetrating teeth, arranged in circumferential rows around the cone, with their adjacent sides parallel or approximately parallel and inclined toward the apex of the cone in such manner that they will extend downward when in contact with the surface at the bottom of the well. Claim 2 exacts "rows of teeth having their adjacent sides parallel," and claim 5 "the adjacent sides of said rows being approximately parallel. * * *" The argument is that the teeth in the accused device are pyramidal, and that the sides of the rows are not parallel. The teeth are long, narrow, chisel-shaped, and penetrating; they are arranged in circumferential rows around the cones; and they are inclined toward the apex of the cone in such manner that they will extend downward when in contact with the surface at the bottom of the well. They are slightly larger at the base than at the cutting edge, but they are not pyramidal in shape; and while the adjacent sides of the rows are not precisely parallel they are approximately and substantially so. The departures from the claims in respect to the shape and form of the teeth are colorable and without change in principle. As such they do not avoid infringement. Sanitary Refrigerator Co. v. Winters, supra; Skinner Bros. Belting Co. v. Oil Well Improvements Co., supra.

There is one further contention in respect to infringement. It relates to the width and depth of the spaces between the rows of teeth. The patent teaches in language too clear for doubt that the spaces shall be wide and deep in order to provide ample clearance. There was no necessity for such an arrangement when

948

pyramidal teeth were in use; but it is essential with long, narrow, chisel-shaped, deep penetrating teeth. The accused assembly discloses wide and deep spacing with ample clearance, which comes well within the coverage of the patent.

The patent is challenged on the ground of generality for failure to furnish a yardstick with which to determine the meaning of "long", "narrow" or "thin" teeth. The contention does not require extended discussion. It is difficult, if not impossible, to state in general terms an abstract rule by which to test objectionable indefiniteness or generality in a patent. Each case must be determined in large measure by its own facts. This patent is in a well known and crowded art; and the specifications and drawings throw significant light upon the meaning with which the words are used. When the prior art, the specifications, and the drawings are taken into consideration in connection with the claims, the patent is not open to the objection of being too indefinite or general to disclose how the invention may be put to use and how infringement may be avoided. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; Vacuum Cleaner Co. v. Innovation Electric Co., 2 Cir., 239 F. 543.

The remaining contention which merits consideration involves the award of damages. It is contended that the evidence was insufficient to establish the fact that the devices covered by the patent were marked before sale in accordance with law as a condition precedent to the recovery of damages. Formerly it was requisite to the recovery of damages that the word "patented" together with the date on which the patent issued be affixed to the article, or if that could not be done, then to the package in which it was enclosed. R.S. § 4900, 35 U.S.C.A. § 49. The amendment of February 7, 1927, provides that an article manufactured under a patent issued after April 1, 1927, shall have affixed thereon the word "patent" together with the number of the patent, and if that cannot be done, the affixation shall be to the package in which the article is enclosed. 35 U.S.C.A. § 49. The number of the patent was substituted for the date of issuance. The patent in suit was issued after April 1, 1927, and is therefore governed by the amended act. There was evidence through the trial that devices manufactured under this patent were commonly called and referred to as Acme cones. The president and general manager of the plaintiff corporation testified in direct examination that the boxes in which Acme cones were shipped were marked with all the patent numbers pertaining to them, including the patent in suit. No reference was made to the matter in cross-examination. Fairly construed, the testimony indicates clearly that the witness meant the usual and ordinary manner of marking which is the affixing of the word "patent" with the number thereof. Any other interpretation would take from the testimony the obvious meaning of the witness.

We fail to find error. The decree is Affirmed.